UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DEMETRIOUS A. GREEN, ] | |
| Plaintiff, ] | |
| vs. ] | 5:07-CV-2087-LSC |
| MICHAEL J. ASTRUE, ] Commissioner, ] Social Security Administration, ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The claimant, Demetrious A. Green, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Green timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Green was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 121, 351-52.) His past work experience includes employment as a spinner and electrical line erector. *Id*. at 91-98, 106-14,116, 357-58. Mr. Green claims that he became disabled on October 1, 2004,[1] due to heart disorder, shoulder problem, and high blood pressure. *Id*. at 115.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These

---

[1]Claimant originally claimed an alleged disability date of March 31, 2004. However, the onset date of disability was amended, by written statement dated May 26, 2006, to October 1, 2004. (Tr. at 16.)

impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the

evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Green "met the insured status requirements of the Social Security Act through December 31, 2006, but not thereafter." (Tr. at 18.) He further determined that Mr. Green has not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Plaintiff's right shoulder rotator cuff tendonitis, coronary artery disease, hypertension, and anxiety, are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* at 22. The ALJ did not find Mr. Green's allegations to be totally credible, and he determined that, based on the

opinion of Claimant's consultative physician, Dr. Prem K. Gulati, he has the following residual functional capacity:

> able to do sitting and standing types of jobs, but may not be able to do heavy lifting or perform overhead work because of the degenerative joint disease of the AC joint. . . . stand for 1 hour at a time for a total of 4 hours per 8-hour day, walk for 1 hour at a time for a total of 3 hours per 8-hour day, and sit for 2 hours at a time for a total of 4 hours per 8-hour day. Claimant could constantly and frequently lift and carry 15 pounds, occasionally lift and carry 20 pounds, and never lift and carry 25 pounds or more. Claimant could constantly push/pull with his left arm and right and left leg, balance, handle, finger, feel, talk, hear, and be around moving mechanical parts, and frequently push/pull with his right arm, climb, stoop, kneel, crouch, crawl, be exposed to extreme cold, vibration, or drive automobile equipment. Claimant can never reach overhead, be exposed to wetness/humidity, fumes, noxious odors, dust, mists, gases, poor ventilation, or work in high exposed places.

*Id*. at 22-23. Further, the ALJ found that "claimant's anxiety is not a severe impairment and poses no significant limitations in his ability to respond to the mental demands of work." *Id*. at 23.

The ALJ concluded that claimant is not able to perform any past work. *Id*. at 24. However, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant

can perform." *Id.* at 25. According to the vocational expert, these jobs consist of an assembler (1,500 in the state economy; 78,000 in the national economy), an inspector (1,200 in the state economy; 64,000 in the national economy), and a bagger (1,100 in the state economy; 59,000 in the national economy). *Id.* Therefore, the ALJ entered a finding that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id.* at 26.

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Green alleges that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence and should be reversed and remanded.

(Doc. 9 at 5-11.) Specifically, Claimant contends that, in determining Plaintiff's RFC, the ALJ did not give appropriate weight to the opinions of his treating physicians. *Id.* at 8.

Plaintiff claims the ALJ did not properly consider the opinions of Plaintiff's treating physicians, Dr. Joseph Cromeans and Dr. Wallace McGahan, in reaching his conclusions. (Doc. 9 at 6.) In determining disability, a treating physician's opinion is to be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). The weight to be afforded a medical opinion concerning the nature and severity of a claimant's impairments depends upon several factors, including, the examining and treating relationship between the medical source and the claimant, the supporting evidence presented by the medical source, the consistency of the opinion with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). If a physician's opinion is not supported by the evidence, or if the opinion is not consistent with the doctor's own records,

there is cause to discount the opinion. *Crawford*, 363 F.3d at 1159; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In forming his opinion, the ALJ relied primarily upon the opinion of Dr. Prem K. Gulati, who performed a consultative evaluation on Claimant on July 21, 2006. (Tr. at 22.) Dr. Gulati noted crepitus in the right shoulder and tenderness in the acromioclavicular joint on the right side. *Id.* Claimant's gait was normal, and could "squat and rise up and do heel and toe walk without difficulty." *Id.* Dr. Gulati diagnosed Claimant with degenerative joint disease of the right shoulder, low back syndrome, history of coronary artery disease, and history of hypertension, but "otherwise his physical examination was essentially normal." *Id.* Dr. Gulati concluded that Claimant would "be able to do sitting and standing types of jobs, but he may not be able to do heavy lifting or perform overhead work because of degenerative joint disease of the AC joint."[2] *Id.* The ALJ specifically noted that Dr. Gulati's opinion was given great weight because he "had the opportunity to personally evaluate the claimant and his opinion is consistent

---

[2] *See supra* p. 5 for Dr. Gulati's entire conclusion.

with his own examination and findings and the entire medical evidence of record as a whole." *Id.* at 24.

The ALJ considered not only the opinion of Dr. Gulati, but also considered the opinions of Dr. Sean P. Groark and Dr. Nauman Islam. Claimant was seen by Dr. Groark, a cardiologist, on July 16, 2004 for evaluation and coronary disease management. (Tr. at 19.) Dr. Groark found that, from a cardiac standpoint, Claimant had "done fairly well . . . without active angina, heart failure, or arrhytmia symptoms." *Id.* He instructed Claimant to return for reassessment in one year. *Id.* When Claimant returned in November 2005, his blood pressure was borderline and he "reported he had quit smoking, was playing basketball, and was exercising almost regularly every morning." *Id.* at 23. Dr. Groark also noted Claimant was "active with a New York Heart Association Functional Class II status, which is identified as '[p]atients with cardiac disease resulting in slight limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain.'" *Id.* at 24.  The ALJ noted that there was nothing in Dr. Groark's records to

indicate Claimant's impairments would cause significant limitation to his ability to perform work-related activities.  *Id*.

Further, on August 3, 2004, Dr. Islam saw Claimant for a consultative examination.  While Dr. Islam did find Claimant to have decreased motion and pain in the right shoulder, he also determined Claimant "can sit and stand and he can walk for short distances." (Tr. at 20.)  And, although Dr. Islam found "Claimant's ability to lift and carry weight that is more than 15 to 20 pounds and his ability to walk for long distances appears to be impaired," he also opined that Claimant's "ability to hear, speak, and travel is unimpaired." *Id*.  All of these findings were consistent with those of Dr. Gulati.

While Claimant contends that the ALJ incorrectly gave little weight to the opinions of Claimant's treating physicians, Drs. Cromeans and McGahan, the ALJ was justified in doing so.  The ALJ found that, although Drs. Cromeans and McGahan are the treating physicians, "they are both in the same clinic and their treatment records do not support their findings and are inconsistent with the other medical evidence of record as well."

Claimant was seen by Dr. Cromeans on several occasions: May 15, 2004, Claimant complained of right shoulder pain, rating the pain an 8 out of 10; June 17, 2004, he again complained of right shoulder pain, with pain being an 8 out of 10; October 1, 2004, he complained of neck and back pain and was assessed with chronic right shoulder pain; October 24, 2004, Claimant rated his back pain as 8 out of 10; December 17, 2004, Claimant rated his back pain as a 7 out of 10; and, finally, on January 21, 2005, he rated his back pain as an 8 out of 10. (Tr. at 175-76, 240-43.) On all of these occasions, Dr. Cromeans prescribed Lortab 10 for Claimant. *Id.* This continued through 2006. *Id.* at 227-39.

Dr. Cromeans also completed a Physical Capacities Evaluation and Clinical Assessment of Pain and Fatigue/Weakness. He determined Claimant "could lift and/or carry 10 pounds occasionally or less frequently, could sit for 2 hours total during an entire 8-hour day, and stand and walk for 3 hours during an entire 8-hour day. Claimant could frequently perform gross and fine manipulation, and work around dust, allergens, fumes, etc." (Tr. at 21, 208-11.) He further concluded that Claimant's "pain and fatigue/weakness were present to such an extent as to be distracting to adequate

performance of daily activities or work, and physical activities greatly increased his pain and fatigue/weakness to such a degree as to cause distraction from tasks or total abandonment of tasks." *Id*.

As to Dr. McGahan, this Court cannot find, nor does Claimant point to, any medical evidence within the record to indicate that Dr. McGahan was actually a "treating" physician to Claimant, other than the assessments noted below. However, as the ALJ stated, Dr. McGahan is a physician with the Cromeans Clinic, and he did complete a Physical Capacities Evaluation and Clinic Assessment of Fatigue/Weakness. (Tr. at 21, 24.) Dr. McGahan found Claimant's "pain was present and found to be intractable and virtually incapacitating and his fatigue/weakness was present to such an extent as to negatively affect adequate performance of daily activities or work." *Id*. at 21, 214-215. However, he also determined that Claimant could "occasionally or less frequently lift and/or carry 10 pounds, sit for 2 hours total during an entire 8-hour day, stand and walk for 3 hours total during an entire 8-hour day. . . . [and] could frequently perform gross and fine manipulation, occasionally push and pull with arm and/or leg controls and stoop." *Id*. at 21.

In reviewing the records of Dr. Cromeans, and comparing them to the assessments completed by both he and Dr. McGahan, the ALJ found that "their treatment records do not support their findings and are inconsistent with the other medical evidence of record." (Tr. at 24.) Additionally, the ALJ noted that, while Claimant received treatment for heart disease, the treatment "has been essentially routine and conservative in nature and generally successful in controlling those symptoms." *Id*. at 23. The ALJ further noted that "the treatment has been essentially routine and/or conservative in nature" with regard to Claimant's shoulder problems as well, and that he has never sought treatment from a specialist, nor had any surgical procedures on his shoulder. *Id.*

Based on the Court's review of the record, the ALJ properly considered the opinions of Plaintiff's treating physicians.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Green's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 2nd day of December 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671